### A99A0264. THE STATE v. REDDY.
(511 SE2d 530)

ELDRIDGE, Judge.

On March 22, 1998, at approximately 1:00 a.m., Officer Treese of the Emory University Police Department was on patrol on Fraternity Row on the Emory University campus. Near the intersection of Fraternity Row and Asbury Circle, Officer Treese pulled behind a Toyota Land Cruiser driven by the defendant, Suraj Reddy. The intersection is a three-way stop with signs in all three directions. From Fraternity Row, all vehicles must turn either left or right. Vehicles cannot proceed straight ahead at this intersection.

Officer Treese stopped approximately five to seven feet behind the defendant's vehicle so that the turn signals were plainly visible. Defendant, after stopping, made a left turn without signaling, either by hand or by using the car's turn signal. Because of the failure to signal, Officer Treese stopped the defendant three-tenths of a mile from the intersection, where it was a safe location for a traffic stop.

After stopping defendant and asking for his license, Officer Treese noticed the odor of alcohol on the defendant. The defendant was asked to step out of the vehicle so that Officer Treese could determine the origin of the odor of alcohol, either the defendant or his passenger. The odor remained strong on the defendant. Initially, defendant denied any alcohol consumption, but later admitted to one beer. Upon examining the defendant's license, Officer Treese determined that the defendant was under the age of 21.

The defendant consented to submit to field sobriety tests. Defendant admitted that he would probably fail the tests. Defendant, in fact, performed poorly on the field sobriety tests. Officer Treese placed the defendant under arrest for driving under the influence of alcohol to the extent that he was a less safe driver. However, Officer Treese suspected that the defendant was over the legal limit of .02 blood alcohol for drivers who are under the age of 21. Officer Treese gave the defendant the appropriate implied consent warnings, and defendant submitted to a state-administered breath test, which yielded a blood alcohol concentration of .051 grams.

On May 11, 1998, defendant was charged in the State Court of DeKalb County with (1) driving under the influence of alcohol — less safe; (2) driving with an unlawful alcohol concentration for his age; (3) misrepresentation of age for the purpose of obtaining alcohol; and (4) use of false identification for purpose of obtaining alcohol. Defense

counsel filed a motion to suppress all evidence gathered and alleged that the police failed to have a reasonable articulable suspicion to stop defendant's vehicle.

On August 4, 1998, after hearing evidence and argument, the trial court granted the motion to suppress. "In this case, there was no way that anybody could pull up beside him. There was no way anybody was coming from any other directions. There was no one who was endangered in this particular circumstance, and that's when it's required — whenever there's a possibility that someone will be endangered by the failure to give the signal." The State appealed.

1. The State's first enumeration of error is that the trial court erred in suppressing the evidence from the stop of the defendant on the grounds that it was a pretextual stop. We agree that the trial court erred.

Officer Treese stopped the defendant for violating OCGA § 40-6-123, which states that "(a) [n]o person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Code Section 40-6-120 . . . unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section. (b) A signal of intention to turn right or left . . . when required shall be given continuously for a time sufficient *to alert the driver of a vehicle proceeding from the rear in the same direction* or a driver of a vehicle approaching from the opposite direction." (Emphasis supplied.) Officer Treese was in the vehicle immediately to the rear of defendant's vehicle for whose reasonable safety the General Assembly expressly mandated the turn signal, although there were no vehicles to defendant's left or right. Defendant, in the immediate presence of Officer Treese, violated this traffic law, giving probable cause to stop the defendant.

(a) In *Clark v. State*, 208 Ga. App. 896, 897 (432 SE2d 220) (1993), defendant was observed at night changing lanes in order to use an exit ramp 300 feet ahead of the police car without signaling the lane change when there were no other vehicles nearby whose reasonable safety would be affected. This was deemed a pretextual stop by this Court and was "a constitutionally impermissible search." Likewise, in *Bowers v. State*, 221 Ga. App. 886 (473 SE2d 201) (1996), the police vehicle was 100 yards behind the defendant on I-95 when the defendant changed lanes without signaling, and there were no vehicles closer whose reasonable safety would be affected. "It is clear from this statutory language that the intention of the legislature was that no turn signal is required as long as a lane change can be made with 'reasonable safety.' Otherwise, the use of the phrase 'when required' would be rendered meaningless. The stated purpose of the statute is *to alert other drivers*. Clearly there is no need to alert other

drivers when none are present. This purpose gives meaning to the 'when required' phrase contained in the statute." (Citations omitted; emphasis in original.) Id. at 887-888.

However, in this case, the other vehicle, i.e., the police car, was only five to seven feet to the rear, well within the ambit of the Act's "zone of reasonable safety," when such signals are required. *Bowers v. State*, supra at 888. Further, while the principle of these cases may apply equally between lane changes and left or right turns, the distances would not be comparable. This is because of relative speeds of a turning vehicle and an overtaking vehicle, when compared to a following vehicle. The distance zone of "reasonable safety" must be much greater for turning vehicles, because of distances and speeds necessary to safely complete a turn in relation to approaching vehicles. Therefore, these cases have a different application in this factual situation under the applicable law. The trial court plainly erred as a matter of fact and law in relying solely on them to hold that the traffic stop was pretextual, when the officer's car was within the "zone of reasonable safety," thereby mandating a left turn signal. See *Buffington v. State*, 229 Ga. App. 450 (494 SE2d 272) (1997); *Trippe v. State*, 219 Ga. App. 250 (464 SE2d 655) (1995); *McConnell v. State*, 188 Ga. App. 653 (374 SE2d 111) (1988).

(b) In *Buffington v. State*, supra, the police followed the defendant on a parallel exit and observed him make a lane change without signaling. "The trial court did not err in denying the motion to suppress. The temporary detention of a motorist based upon probable cause that he violated a traffic law does not implicate the Fourth Amendment's prohibition against unreasonable searches and seizures, even if a reasonable officer would not have made the stop absent an ulterior motive. *Whren v. United States*, 517 U. S. [806] (116 SC 1769, 135 LE2d 89, 101) (1996). In other words, if the arresting officer witnessed the driver breaking even a relatively minor traffic law, a motion to suppress under the Fourth Amendment arguing that the stop was pretextual must fail. See *Jackson v. State*, 267 Ga. 130, 131 (5) (a) (475 SE2d 637) (1996)." Id. at 451; see also *Maddox v. State*, 227 Ga. App. 602, 604-605 (4) (490 SE2d 174) (1997); *Sanders v. State*, 226 Ga. App. 565, 566 (2) (487 SE2d 115) (1997); *Hobdy v. State*, 222 Ga. App. 625 (475 SE2d 686) (1996); *Daniels v. State*, 222 Ga. App. 29, 30 (1) (473 SE2d 239) (1996).

"Defendant first argues that the initial stop was illegal because it was pretextual. The United States Supreme Court has held, however, that when an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances. See *Whren v. United States*, [supra]. . . . [A] stop was permissible under

the Fourth Amendment if the person stopped had broken the law, regardless of the officer's subjective intent or the objective reasonableness of the stop[.]" (Citations omitted.) *Brantley v. State*, 226 Ga. App. 872-873 (1) (487 SE2d 412) (1997).

2. The State's second enumeration of error is that the trial court erred in suppressing all tangible and intangible evidence acquired from the stop of the defendant's vehicle when granting the defendant's motion to suppress. We agree for the reasons expressed in Division 1.

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED JANUARY 12, 1999 —
RECONSIDERATION DENIED JANUARY 27, 1999.

*Ralph T. Bowden, Jr., Solicitor, Maura F. Krause, Gwendolyn R. Keyes, Assistant Solicitors*, for appellant.
*W. Michael Maloof*, for appellee.